2022 IL App (1st) 210644

No. 1-21-0644

Filed February 17, 2022

Fourth Division

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| MIDWEST COMMERCIAL FUNDING, LLC, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | |
| | ) | No. 20 L 2158 |
| ROBERT SYLVESTER KELLY, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | Honorable |
| (Sony Music Holdings, Inc., Citation Respondent, and | ) | Patrick J. Heneghan |
| Heather Williams, Adverse Claimant-Appellant). | ) | Judge, presiding. |

JUSTICE MARTIN delivered the judgment of the court, with opinion.
Justices Lampkin and Rochford concurred in the judgment and opinion.

**OPINION**

¶ 1    The issue in this case is whether a judgment creditor may perfect service of a citation to discover assets by electronic mail upon a third party prior to that third party's appearance in the matter and, thereby, secure a superior lien over another judgment creditor who later perfected service upon the same third party by U.S. mail. We conclude that Illinois law does not provide for

service by electronic mail in that circumstance; therefore, a judgment creditor does not perfect service or a lien by such method of service.[1]

¶ 2                                    I. BACKGROUND

¶ 3        Robert Sylvester Kelly, known professionally as R. Kelly, was a successful recording artist and, as such, receives royalty payments from Sony Music Holdings, Inc. (Sony). Heather Williams filed an action alleging that Kelly physically and sexually abused her while she was a minor. Williams obtained a $4 million default judgment against Kelly in March 2020. In a separate, unrelated matter, Midwest Commercial Funding, LLC (MCF) filed an action against Kelly for breach of a commercial lease. MCF obtained a default judgment of nearly $3.5 million in July 2020. In each of their respective actions, Williams and MCF caused the Clerk of the Cook County Circuit Court to issue a citation to discover assets upon Sony. Williams sent her citation to Sony by first class mail on August 17, 2020. MCF mailed its citation to Sony two days later, August 19, 2020. However, the same day, August 19th, MCF sent a copy of its citation, attached to an electronic mail (e-mail) message, to a member of Sony's in-house legal staff, David Castagna. MCF knew Castagna's e-mail address since MCF had corresponded with Castagna in prior legal matters. In an e-mail response to MCF on August 24, 2020, Castagna acknowledged receipt of MCF's citation. The record does not clarify if Castagna was referring to MCF's e-mailed citation copy, or the paper citation MCF sent by U.S. mail. Castagna followed with a more formal response on August 27, 2020, which stated that Sony had also received a citation from Williams. A postal return receipt shows Williams's citation was delivered to Sony on August 24, 2020.

¶ 4        Subsequently, both MCF and Williams filed adverse claims in each other's cases. Before the circuit court, MCF and Williams contested the priority of their citations and, consequently,

---

[1]In adherence with the requirements of Illinois Supreme Court Rule 352(a) (eff. July 1, 2018), this appeal has been resolved without oral argument upon the entry of a separate written order.

their liens on Kelly's assets held by Sony. In a written order, the circuit court stated that the issue came down to the timing of service. Relying upon Illinois Supreme Court Rule 12(c) (eff. July 1, 2017), the court found that MCF perfected service upon Sony prior to Williams, since Rule 12(c) provides that service by electronic means is complete on the day of transmission, while service by U.S. mail is complete four days after mailing. Applying those provisions, the court found that MCF completed service upon Sony on August 19th—the day MCF transmitted its citation by e-mail— and Williams completed service on August 21st—four days after she sent her citation by U.S. mail. Thus, MCF was first, and the court rejected Williams's claim of priority. The court also rejected Williams's equitable arguments in favor of her priority. The court then ordered a turnover to MCF of funds in Kelly's royalty account and any additional funds that may accrue in the account up to the sum of MCF's judgment. Further, Sony was ordered to pay Williams only after MCF's judgment is satisfied. Williams filed a motion to reconsider, which the court denied by written order. Williams timely appealed.

¶ 5                                         II. ANALYSIS

¶ 6                         A. Citation to Discover Assets Creates a Lien

¶ 7          Section 2-1402 of the Code of Civil Procedure (735 ILCS 5/2-1402 (West 2020)) enables a judgment creditor to commence supplementary proceedings to enforce a judgment by serving a citation to discover assets upon a judgment debtor or "any other person." *Id.* § 2-1402(a),(b). "[O]nce a judgment creditor serves the judgment debtor with a citation to discover assets, a judgment lien is perfected on those assets of the debtor which are not otherwise exempt under law." *Sign Builders, Inc. v. SVI Themed Construction Solutions, Inc.*, 2015 IL App (1st) 142212, ¶ 16; 735 ILCS 5/2-1402(m) (West 2020). Likewise, when the citation is directed against a third party, the judgment becomes a lien upon assets of the debtor in the third party's possession or

control. *Id.* § 2-1402(m)(2). A perfected lien is superior to any lien that later attaches to the assets. *Sign Builders*, 2015 IL App (1st) 142212, ¶ 16; *Pontikes v. Perazicc*, 295 Ill. App. 3d 478, 485 (1998).

¶ 8        Williams and MCF dispute which of them first perfected a lien on Kelly's assets held by Sony. Resolution of the issue hinges on whether MCF's August 19th e-mail to Sony's legal department, with the citation attached, constitutes proper service. If so, MCF perfected a superior lien on Kelly's royalty account; if not, Williams perfected a superior lien by mailing her citation on August 17, two days before MCF mailed its citation. Service by U.S. mail is deemed completed four days after mailing. Ill. S. Ct. R. 12(c) (eff. July 1, 2017).

¶ 9                         B. Standing to Raise Improper Service on a Citation Respondent

¶ 10        Before we address which party has a superior lien, we examine MCF's contentions that Williams's appeal is barred. First, MCF argues that Williams lacks standing to raise issues regarding service upon Sony, asserting that only Sony has standing to raise such issues. As MCF points out, Illinois courts have stated, on multiple occasions, that " 'a party may "object to personal jurisdiction or improper service of process only on behalf of himself or herself." ' " *People v. Matthews*, 2016 IL 118114, ¶ 19 (quoting *In re M.W.*, 232 Ill. 2d 408, 427 (2009), quoting *Fanslow v. Northern Trust Co.*, 299 Ill. App. 3d 21, 29 (1998)).

¶ 11        "Standing is an element of justiciability, and it must be defined on a case-by-case basis." *People v. Greco*, 204 Ill. 2d 400, 409 (2003). We find the cases MCF relies on distinguishable from the present matter. In *Matthews*, a petitioner filed a *pro se* petition for relief from judgment (see 735 ILCS 5/2-1401 (West 2020)) in the circuit court several years after his murder conviction, claiming that a witness committed perjury in his trial. *Matthews*, 2016 IL 118114, ¶¶ 3-4. The petition contained a certification stating that the State had been served with a copy by mail. *Id.* ¶ 4.

A month after the petition was docketed, the circuit court dismissed the petition *sua sponte*, finding the petition meritless on its face. *Id.* On appeal, the petitioner argued that the trial court's dismissal was premature because he failed to properly serve the State with notice of his petition, as required by rule, despite his certification. *Id.* ¶ 5. Our supreme court held that the petitioner was estopped from arguing for reversal based on his own service error, since he certified that he had properly served the State, effectively requesting the circuit court to proceed with the matter as though service was proper. *Id.* ¶ 14. The court went on to observe that to accept the petitioner's argument on appeal, litigants would have an incentive to improperly serve other parties so that they could get a second opportunity should they receive an adverse ruling in the trial court. *Id.* ¶ 15.

¶ 12    In *In re M.W.*, which was discussed in *Matthews*, a juvenile argued that her adjudication of delinquency was void for lack of jurisdiction, since her father had not been served with notice in accordance with the Juvenile Court Act of 1987 (705 ILCS 405/5-530 (West 2004)). *In re M.W.*, 232 Ill. 2d at 412. Our supreme court reasoned that the father could waive service and the minor did not have standing to object to improper service on his behalf. *Id.* at 427.

¶ 13    In *Fanslow*, the holder of a promissory note sought to draw on Northern Trust's letter of credit, which secured the note, when the maker of the note defaulted. *Fanslow*, 299 Ill. App. 3d at 25-26. But a Pennsylvania court had enjoined Northern Trust from paying on the letter of credit. *Id.* at 26. The Pennsylvania court issued the injunction, despite the lack of service upon Northern Trust in the action requesting the injunction. *Id.* Fanslow later brought an action in Illinois against Northern Trust, alleging that it wrongfully dishonored the letter of credit.[2] *Id.* at 28. Fanslow argued that the Pennsylvania court's injunction did not enable Northern Trust to dishonor the letter of credit, since Northern Trust was not properly served in the Pennsylvania action. Citing

---

[2]The facts of *Fanslow* are far more complicated. We distill them to their essence as relevant to the present discussion.

Pennsylvania statutes, this court stated that Fanslow lacked standing to object to the Pennsylvania court's exercise of jurisdiction over Northern Trust, since such objections are waivable. *Id.* at 30. Since Fanslow lacked standing to assert Northern Trust's objections, and this court rejected his other arguments, the Pennsylvania injunction gave Northern Trust a valid defense to Fanslow's claims. *Id.* at 31-32.

¶ 14        This case presents a far different situation. Williams is not seeking to vicariously assert Sony's waivable right to notice, unlike the attempts of the parties in the cases we just discussed. Rather, she is asserting her own interest in Kelly's royalty account by arguing that MCF's e-mail did not perfect service and that she acquired a superior lien by being first to mail a citation to Sony. Thus, she has a real interest in the outcome of this controversy. See *Greco*, 204 Ill. 2d at 409 ("The doctrine of standing is intended to [e]nsure that issues are raised and argued only by those parties with a real interest in the outcome of the controversy."). Also, unlike *Matthews* or *In re M.W.*, Williams is not seeking a second opportunity to litigate an underlying claim or get a new trial due to a defect in service to another party. The alleged defect in service is the pivotal issue at the heart of the matter before us. Neither is Williams seeking to undermine the effect of another court's order, as in *Fanslow*. Further, we believe that Williams has standing to raise issues regarding service of MCF's citation to discover assets upon Sony, as a contrary finding would deprive her, or any similarly situated judgment creditor, of any opportunity to assert her claim of a superior lien upon the assets in the citation respondent's possession. Worse, we would effectively empower the citation respondent to determine priority among judgment creditors by electing when to waive or object to service. Such power could be exercised arbitrarily, or perhaps nefariously through agreement with a creditor, and leave other creditors, who may have legally superior claims, without

recourse. We will not countenance that result. For these reasons, we reject MCF's argument and find that Williams has standing to challenge MCF's citation service on Sony.

¶ 15                                    C. Forfeiture

¶ 16        Next, MCF claims that Williams waived or forfeited the issue, as she did not specifically challenge the propriety of MCF's service by e-mail until she asserted the argument in her motion to reconsider. As MCF notes, "[a]rguments raised for the first time in a motion for reconsideration in the circuit court are forfeited on appeal." (Internal quotation marks omitted.) *Tafoya-Cruz v. Temperance Beer Co.*, 2020 IL App (1st) 190606, ¶ 83. This rule, however, is a limitation on the parties, not on the court. *Carlson v. Michael Best & Friedrich LLP*, 2021 IL App (1st) 191961, ¶ 52. We may exercise discretion to consider the argument on the merits, as it is an issue of law as applied to undisputed facts, which the parties have fully briefed, and MCF is not prejudiced by our consideration of the issue under these circumstances. *Id.*; see *People v. Begay*, 2018 IL App (1st) 150446, ¶ 55 (party not prejudiced when appellate court considers "thoroughly briefed," "purely legal" issue not raised in the trial court). Accordingly, we turn to the merits of this appeal.

¶ 17                              D. Service by Electronic Mail

¶ 18        As authority for perfecting service of a citation to discover assets by e-mail, MCF relies on Illinois Supreme Court Rule 11 (eff. July 15, 2020). We construe Illinois Supreme Court Rules using the same principles that govern interpretation of statutes. *Ferris, Thompson & Zweig, Ltd. v. Esposito*, 2017 IL 121297, ¶ 22. Our primary goal is to ascertain and give effect to the intent of the drafters. *Id.* "The most reliable indicator of that intent is the language used, given its plain and ordinary meaning." *Id.* We consider the rule in its entirety and keep in mind the subject it addresses. *Id.*

¶ 19        Rule 11 provides for serving documents by e-mail "to the e-mail address(es) identified by the party's appearance in the matter." Ill. S. Ct. R. 11(c) (eff. July 15, 2020). In accord with that procedure, Rule 11 requires attorneys to "include on the appearance and on all pleadings filed in court an e-mail address to which documents and notices will be served." Ill. S. Ct. R. 11(b) (eff. July 15, 2020). Thus, a plain reading of Rule 11 reveals that the rule contemplates service of documents only *after* a party has appeared in "the matter." Logically, one could not make service to the e-mail address "identified by the party's appearance in the matter" if such party has not yet appeared and provided an e-mail address. Therefore, Rule 11 does not contemplate service of documents upon a party who has not yet appeared in the matter before the court. Indeed, the title of Rule 11—"Manner of Serving Documents *Other Than Process* and Complaint on Parties Not in Default in the Trial and Reviewing Courts"—suggests the opposite. (Emphasis added.) Ill. S. Ct. R. 11 (eff. July 15, 2020). Process is required for a party to have a duty to appear or to bear consequences for the failure to do so. See Black's Law Dictionary 1222 (7th ed. 1999) (defining "process" as "[a] summons or writ, esp. to appear or respond in court"). Thus, Rule 11 expressly excludes the kind of notices and documents that trigger a party's initial duty to appear or expose the party to sanction or other legal consequences for failure to appear after receipt of such notice— put differently, the process that confers the court's personal jurisdiction over the party. See *BAC Home Loans Servicing, LP v. Mitchell*, 2014 IL 116311, ¶ 18 ("Personal jurisdiction may be established either by service of process in accordance with statutory requirements or by a party's voluntary submission to the court's jurisdiction."). Consequently, Rule 11 does not provide for service by e-mail of notices or documents with the features of process—that is, an initial notice of the matter and summons to appear.

¶ 20          In our view, a citation to discover assets, when directed against a third party who has not yet appeared in the action, amounts to process and is akin to a summons. The citation requires the party to appear and invokes the circuit court's jurisdiction over such party. Absent service of the citation, such party has no duty to appear, nor could the court subject such party to the sanctions provided in section 2-1402 for noncompliance. See 735 ILCS 5/2-1402(f)(1) (West 2020) ("The court may punish any party who violates the restraining provision of a citation as and for a contempt ***."). As the Fourth District observed, "supplementary proceedings may target third parties who might not even know that a lawsuit has taken place or that a judgment has been rendered." *Shipley v. Hoke*, 2014 IL App (4th) 130810, ¶ 93. Further, "issuance of a citation [to discover assets] imposes very real restrictions and affirmative duties upon a third party—backed by the threat of contempt and monetary liability." *Id.* ¶ 94. "For this reason, the initiation of supplementary proceedings against a third party must be accompanied by service of process and the special notices set forth in section 2-1402(b) of the Code [of Civil Procedure]." *Id.* ¶ 93. Accordingly, a citation to discover assets is not the kind of document contemplated in Rule 11, at least when directed to a party who has not appeared; therefore, Rule 11 does not authorize service of such a citation by e-mail.

¶ 21          In this case, Sony had not appeared in the underlying action before either party attempted to serve Sony with a citation to discover assets. Only upon proper service of a citation did the circuit court acquire jurisdiction over Sony. Thus, a properly served citation would act as service of process upon Sony. Rule 11 is the sole basis in Illinois law for service of documents by e-mail but, as we explained, that rule does not apply to a citation to discover assets in this situation. Therefore, MCF's August 19th e-mail was not a recognized method for service of the citation under Illinois law. Consequently, the e-mail did not perfect a lien pursuant to section 2-1402.

Section 2-1402 does not specify a particular method of service, but it expressly permits service of the citation by mail. See 735 ILCS 5/2-1402(a), (b) (West 2020). Williams mailed her citation to Sony two days before MCF mailed its citation. As Rule 12 provides that service is deemed complete four days after mailing, Williams perfected a lien superior to that of MCF's on Kelly's royalty account with Sony.

¶ 22                                                    III. CONCLUSION

¶ 23          Accordingly, we reverse the circuit court's order denying Williams's claim of priority and vacate the orders directing Sony to turn over funds from Kelly's royalty account to MCF. We further vacate the orders recognizing MCF's lien as superior to Williams's on any funds that may accrue in the future in Kelly's royalty account. We remand this matter to the circuit court to enter orders directing Sony to turn over to Williams any funds currently in Kelly's royalty account and any funds that may accrue in Kelly's royalty until such time as Williams's judgment is satisfied.

¶ 24          Reversed, vacated, and remanded with directions.

**No. 1-21-0644**

| | |
|---|---|
| **Cite as:** | *Midwest Commercial Funding, LLC v. Kelly*, 2022 IL App (1st) 210644 |
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, No. 20-L-2158; the Hon. Patrick J. Heneghan, Judge, presiding. |
| **Attorneys for Appellant:** | Jeffrey S. Deutschman, of Deutschman & Skafish, P.C., of Chicago, for appellant. |
| **Attorneys for Appellee:** | Jamie L. Burns, of Levenfeld Pearlstein, LLC, of Chicago, for appellee. |